Elmer W. Fulton

*vs.*

Fred W. McBurnie and Hazel M. McBurnie.

Aroostook.    Opinion, August 24, 1935.

*R. W. Shaw,*
*Herschel Shaw,* for plaintiff.
*Bernard Archibald,*
*W. R. Roix,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, THAXTER, HUDSON, JJ.

THAXTER, J.    The plaintiff, Elmer W. Fulton, has brought a bill in equity against the defendants, who are husband and wife, seeking to have a deed conveying certain real estate declared a mortgage, and asking that he be given the right to redeem the property concerned on payment of the amount found to be due and owing by him. The conveyance was made to the defendant, Fred W. McBurnie, and by him the property was transferred to his wife without, as the bill alleges, any valuable consideration being paid therefor. The sitting Justice found that the evidence was not of "the clear and convincing character that is requisite to constitute a deed an equitable mortgage," and accordingly dismissed the bill. The plaintiff has appealed.

The property in question was owned by the plaintiff and was mortgaged by him to the Federal Land Bank for $2,500, and subsequently he executed a second mortgage which was foreclosed by the holder, who conveyed his interest to the International Agricultural Corporation. A reconveyance of this equity to the plaintiff was arranged for, and the defendant, Fred W. McBurnie, supplied the money amounting to $1,800. The deed was taken in the name of the plaintiff, who immediately conveyed the property to McBurnie. Contemporaneously with the drafting of this deed, which was in fact signed on January 22, 1931, a so-called contract was framed, which, though dated January 20, 1931, was not in fact executed by the plaintiff till January 26th, when he gave the deed in question to McBurnie. This agreement is of the following tenor:

"January 20, 1931.

I, Elmer Fulton of Houlton, Maine, hereby agree to deed and convey to Fred McBurnie, of Bridgewater, Maine my

homestead farm situated in Bridgewater, Maine on the main highway, otherwise known as the Fulton Farm, in consideration of One dollar ($1.00) and other valuable considerations, paid by said McBurnie, and the receipt of which is hereby acknowledged.

I also agree to purchase said farm from said McBurnie on or before November 1, 1931 at a price to be agreed upon.

I also agree to rent said farm from this date to November 1, 1931, for the sum of Seven Hundred Dollars ($700.00), payable in advance. Said sum to be deducted from the purchase price should I purchase said farm from said McBurnie on or before November 1, 1931.

Signed, sealed and delivered in the presence of

........................ (Signed) Elmer W. Fulton"

The plaintiff claims that he asked McBurnie for a loan to recover back from the International Agricultural Corporation this property which had formerly been his, that the advance of $1,800 was made for this purpose and the deed given to McBurnie as security for the advance. McBurnie stated that there never was any talk of a loan prior to the conveyance, and that the farm was to be his on the payment of $1,800. That a reconveyance to the plaintiff was contemplated seems to be apparent, but McBurnie contends that the terms under which this should be made were to be fixed by him.

We have no quarrel with the principles of law which, counsel for the defendants asserts, are applicable to this case.

The character of the transaction, whether it be a sale or a mortgage, is determined at its inception, and though the deed be absolute in form, the conveyance may in equity be shown to have been intended as security for a pre-existing debt or a contemporaneous loan. *Reed* v. *Reed*, 75 Me., 264. "It is therefore," said the Court, page 270, supra, "a question of fact, whether, on looking through the forms in which the parties have seen fit to put the result of their negotiations, the real transaction was in fact a security or sale. Hence all the facts and circumstances of the transaction, whatever form the written instruments have been made to assume, are admissible, each case depending upon its own. The evi-

dence, therefore, is not confined to a mere inspection of the written papers alone; but 'extraneous evidence is admissible to inform the court of every material fact known to the parties when the deed and memorandum were executed. To insist on what was really a mortgage, as a sale, is in equity a fraud, which cannot be successfully practised under the shelter of any written papers, however precise they may appear to be.' *Russell* v. *Southard*, 12 How. 139, 147, and cases cited on the latter page."

As we view all the circumstances surrounding this transaction and consider the facts, we can not escape the conclusion that the deed given by the plaintiff in this instance was intended by the parties as security for a loan of $1,800 advanced by McBurnie to permit the plaintiff to recover a piece of property which had once been his.

There may well be some ambiguity in the accompanying agreement signed by the plaintiff. Though insufficient in itself to indicate that there was a right of defeasance, it does show something other than an absolute sale. It tends to corroborate the plaintiff's testimony that there was an understanding about a reconveyance and that the deed was in fact given as security for money advanced.

But there is evidence in the case of much more decisive character. McBurnie at a number of points in his testimony refers to the transaction as a loan. In response to a question by the Court, he states that he figured interest at ten per cent. Why interest if there was no loan? At another point he testifies as follows:

> "Q. Have you figured up since this suit was brought what you claim Mr. Fulton owes you?
> A. Yes sir, we have got the payments all down.
> Q. How much does he owe you?
> A. Something over thirty-five hundred dollars actual money paid out, beside the improvements."

Why, it may be asked, should the plaintiff owe him for improvements if the property did not in fact belong to the plaintiff?

Furthermore, for what reason, when this property was bought from the International Agricultural Corporation, should the deed have been taken in the name of the plaintiff but to show that the subsequent deed from the plaintiff was in effect a mortgage?

Perhaps most significant of all is that McBurnie rendered an account to the plaintiff showing the balance due, on the payment of which he would make a reconveyance. The first item on this account significantly enough shows cash $1,800 and interest at 10%, $140. Then follow items for taxes and insurance paid by Mc-Burnie.

The real dispute between these parties seems to have been not so much as to whether this conveyance was in fact a mortgage but rather over the sum claimed to be due. That amount can be determined by the Court, and the payment of it made a condition precedent to a reconveyance.

The claim that Hazel M. McBurnie, the wife of the equitable mortgagee, was in fact a bona fide purchaser of this property rests, it would seem, on a very flimsy foundation.

The appeal must be sustained and the case remanded to the sitting Justice to determine the amount due from the plaintiff to the defendant, Fred W. McBurnie, and for a decree ordering a reconveyance of the property from the defendant, Hazel M. McBurnie, on the payment by the plaintiff of the sum due within such time as may be fixed in such decree.

*So ordered.*